# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| MICHELLE KAUFMAN, | CIVIL ACTION |
| Plaintiff | |
| VERSUS | NO. 16-10446 |
| WAL-MART STORES, INC., ET AL., | SECTION: "E" (3) |
| Defendants | |

## ORDER AND REASONS

Before the Court is a motion for judgment notwithstanding the verdict, or alternatively, a new trial filed by Plaintiff Michelle Kaufman.[1] The motion is opposed.[2] Plaintiff filed a reply to the Defendants' opposition.[3] The Court finds that Plaintiff is entitled to a new trial as set forth below.

## BACKGROUND

This is a personal injury case involving falling merchandise. The accident occurred on July 18, 2015 at the Wal-Mart located at 1901 Tchoupitoulas Street in New Orleans, Louisiana. The case was tried on July 31 and August 1, 2017 before an eight-person jury.[4] The jury found that Wal-Mart was negligent and that Wal-Mart was the legal cause of the injuries suffered by Plaintiff.[5] The jury awarded Plaintiff the following damages[6]:

| Past medical expenses | $9696.99 |
|---|---|
| Future medical expenses | $900.00 (1 Filler Dr. Pelias) |
| Past physical and mental pain and suffering and loss of enjoyment of life: | $0 |
| Future physical and mental pain and suffering and loss of enjoyment of life | $0 |

---

[1] R. Doc. 78.
[2] R. Doc. 80.
[3] R. Doc. 85.
[4] R. Docs. 62, 66.
[5] R. Doc. 69.
[6] *Id.*

1

| Physical disfigurement | $0 |
| --- | --- |

The jury awarded Plaintiff past medical expenses in the amount of $9696.99, but only $900 for future medical expenses.[7] At trial, Plaintiff offered the medical opinions of Dr. Christopher Beck, Dr. Alireza Sadeghi, Dr. Marilyn E. Pelias, and Dr. Michael M. Worley regarding the extent of her injuries and her future medical expenses.

Dr. Beck described the trauma Plaintiff's facial bones sustained when the merchandise fell on her. He explained that "a fracture . . . showed up on all three scans of a bone called the frontal process of her maxilla."[8] He testified that the fracture was caused by the falling merchandise.[9] Both Dr. Pelias and Dr. Sadeghi testified that Plaintiff sustained a permanent injury in the form of fat atrophy or flattening resulting in physical disfigurement in connection with the facial fractures she incurred.[10] Although in their testimony the doctors recommended different treatments to remedy Plaintiff's disfigurement, both doctors agreed that Plaintiff will require future medical treatment. Dr. Pelias testified that, "[a]n estimate of the filler expense that Ms. Kaufman will incur in the future is as follows: Approximately $2,200.00 in filler cost every 9–12 months will likely be needed for maintenance after the initial restoration of her contour."[11] Dr. Sadeghi

---

[7] The parties stipulated that prior to trial, Plaintiff incurred $9,696.19 in past medical bills. R. Doc. 58 at ¶ 1. The jury determined, however, that Plaintiff was entitled to recover these medical expenses.
[8] R. Doc. 78-9 at 3–4.
[9] R. Doc. 78-11 at 3–4.
[10] Dr. Pelias testified:
    **Q**: All right. So, Doctor, the fat loss, the volume loss that Ms. Kaufman has experienced is permanent; is that fair to say?
    **A**: Yes. Because you have a given number of fat cells and they're in a given location. And if—if some of those are injured or killed, those fat cells will never come back. So other fat cells can grow and shrink with gain and loss of weight, but once a fat cell is dead, it—it doesn't reform.
  Dr. Sadeghi testified:
    **Q**: Now, she had a loss of volume on the right side which I believe is where the fracture was, where she told you she was struck?
    **A**: Right.
  R. Docs. 78-15 at 3; 78-20 at 3–4.
[11] R. Doc. 78-22 at 1. Dr. Pelias also explained:

recommended Plaintiff undergo a fat grafting procedure. Dr. Sadeghi estimated this procedure would cost approximately $40,400, including Dr. Sadeghi's $7,500.00 fee and the hospital's fee of $32,900.[12] Before trial, the parties stipulated that if a third doctor, Dr. Worley, were called to testify, he would testify that the implant procedure he recommended would cost $6,675.00.[13]

Defendants did not seek an independent medical evaluation of Plaintiff and stipulated that, if economic loss expert G. Randolph Rice, Ph.D. were called to testify, he would testify that the present value of the future medical treatment recommended and projected by Dr. Pelias is $101,200.00 if the filler is done every 9 months and $75,262.00 if done every 12 months.[14] At no point during the trial did any witness testify the cost of Plaintiff's future medical treatment would be $900.00.

Plaintiff now moves for a judgment notwithstanding the verdict, or, in the alternative, a new trial, arguing the jury's $900 award for future medical treatment is grievously insufficient to defray her future medical treatment.

## ANALYSIS

In her motion, Plaintiff contends, *inter alia*, that the jury's award for her future medical expenses was "woefully inadequate."[15] She argues that because the jury's award

---

        Despite the wide variation in type and duration of fillers, the long term costs are very similar. Currently Bellafill has the longest indication, when used intradermally it can test up to 5 years. It is unknown how long it will last in a subcutaneous position. Bellafill costs $1,200 per syringe and 4-5 syringes would be needed to adequately fill her defect layered in over a period of a few months.

*Id.*
[12] R. Docs. 78-24 at 3; 78-26 at 3.
[13] R. Docs. 78-28 at 1; 78-29 at 1.
[14] R. Doc. 58 at ¶ 3.
[15] R. Doc. 78-1 at 26.

is so deficient, the "Court [should] increase the jury's award for future medical treatment."[16]

"The Seventh Amendment to the [U.S] Constitution not only preserves the right to trial by jury but assures that 'no fact tried by a jury[] shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.'"[17] However, "[w]here the verdict returned by a jury is palpably and grossly inadequate or excessive, it should not be permitted to stand."[18] In either case, "both parties remain entitled, as they were entitled in the first instance, to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages."[19] [W]here the verdict is too small, an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict."[20] Thus, this Court cannot grant Plaintiff the additur she seeks without violating the Seventh Amendment.[21]

In the alternative, Plaintiff asks this Court to order a new trial. "[I]n an action based on state law but tried in federal court by reason of diversity of citizenship," as here, "a district court must apply a new trial or [additur] standard according to the state law's controlling jury awards for excessiveness or inadequacy."[22] Under Louisiana law, a party is entitled to a new trial "[w]hen the verdict or judgment appears clearly contrary to the law and the evidence."[23] The law permits a state court to grant a new trial "in any case if

---

[16] R. Doc. 78 at 27, 33.
[17] *Taylor*, 868 F.2d at 164.
[18] *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935); *accord Taylor v. Green*, 868 F.2d 162, 164 (5th Cir. 1989).
[19] *Dimick*, 293 U.S. at 486.
[20] *Id.*
[21] The Seventh Amendment prohibits additurs in federal court, at least where the amount of damages is in dispute, as it is here. *See Hawkes v. Ayers*, 537 F.2d 836, 837 (5th Cir. 1976).
[22] *Fair v. Allen*, 669 F.3d 601, 604 (5th Cir. 2012) (quoting *Foradori v. Harris*, 523 F.3d 477, 498 (5th Cir. 2008)).
[23] La. Code Civ. P. art. 1972.

there is good ground therefor, except as otherwise provided by law."[24] When granting a new trial, the court may evaluate the evidence and draw its own inferences and conclusions.[25]

Under Louisiana law, additur is the only alternative to a new trial when the jury's damages award is legally deficient. Louisiana Code of Civil Procedure article 1814 provides for remittitur or additur as an alternative to a new trial as follows:

> If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case. If a remittitur or additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith.

Thus, "[w]hen a jury awards an amount that is lower than the lowest reasonable amount, additur becomes proper."[26] Although the Seventh Amendment bars a federal court from entering an additur to supplement a legally deficient jury verdict, Louisiana courts are not similarly constrained.[27] Because a federal court may not enter an additur, when an additur would otherwise be proper under Louisiana law, the only option available to a federal court sitting in diversity is to grant a new trial.

At trial, Plaintiff offered the uncontroverted testimony of three physicians, each of whom testified Plaintiff would require future medical treatment. The "lowest reasonable amount" offered into evidence at trial for Plaintiff's future medical expense was

---

[24] *Id.* art. 1973.
[25] *Joseph v. Broussard Rice Mill, Inc.*, 2000-0628 (La. 10/30/00); 772 So. 2d 94, 104.
[26] *Accardo v. Cenac*, 97-2320 (La. App. 1 Cir. 11/6/98), 722 So.2d 302, 307–08.
[27] The Seventh Amendment of the U.S. Constitution is one of the few rights contained within the Bill of Rights that has not been made applicable to the states. *See Rudolph v. Massachusetts Bay Ins. Co.*, 472 So. 2d 901, 903 (La. 1985).

$6,675.00. Although the testimony at trial established that the lowest reasonable amount for Plaintiff's future medical needs is $6,675.oo, the jury awarded her only $900 in future medical expenses. Given the uncontroverted testimony at trial and the fact that the jury's damage award for Plaintiff's future medical expenses was drastically lower than the lowest reasonable estimate submitted into evidence, this award is clearly inadequate.[28] Under these circumstances, a new trial is required.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that Plaintiff Michelle Kaufman's motion for new trial is **GRANTED**. The Court will hold a scheduling conference to select a new trial date.

**New Orleans, Louisiana, this 8th day of December, 2017.**

                                                  **SUSIE MORGAN**
                              **UNITED STATES DISTRICT JUDGE**

---

[28] *See Accardo*, 722 So. 2d at 311 (finding that the jury's award for damages was "so deficiently low as to constitute an abuse of discretion" and, therefore, finding "the trial court's grant of additur was proper").